Dale *v.* Robinson et al.

CHARLES H. DALE *v.* MARY A. ROBINSON AND ISAAC D. ROBINSON.

[IN CHANCERY.]

*Married Woman's Separate Property—When Charged with Payment of Her Debts.*

Debts contracted by a *feme covert* in the management of her separate property and for its benefit, or for her benefit on its credit, will, in equity, be charged on such property, whether it be personalty or realty, unless the instrument creating her estate therein protects it from being so charged. Thus, where it appeared that the orator, in a suit brought against husband and wife to enforce a demand against the separate property of the wife, had performed labor for the wife at her request on and about land and buildings that were conveyed to her during coverture by deed in common form and which she and her husband occupied, and had sold and delivered to her property that was used in business carried on on the premises by the husband in the wife's name, and had pastured the wife's cows, all on the wife's credit and the credit of her property, and under such circumstances that the wife knew, or in the exercise of ordinary care might have known, that the labor was so performed, the property so sold, &c., it was *held* that although a wife could not exercise the *jus disponendi* of her property without procuring, in some cases the formal concurrence of her husband, or, in others, the permission of the court, yet, in equity, the orator's debt should be a charge on the wife's separate property ; and that it could make no difference that the husband had possible rights as tenant by the curtesy, nor that the wife allowed the profits arising from the property sold by the orator and the income from the cows to be used in the support of her and her husband's family, nor that the orator's charges were made to both husband and wife.

*Semble* that the general engagements of a *feme covert*, unconnected with her separate estate, being void at law, are not enforceable in equity against such estate unless they were legally made a charge thereon—as by mortgage, in case the property was realty, or by a pledge and delivery, in case it was personalty.

APPEAL from the Court of Chancery.

The bill alleged that on and before January 1, 1867, and from that time to the bringing of the bill, the defendant Mary A. Robinson was the wife of the defendant Isaac D. Robinson, and lived with him as such ; that during all that time she was the owner of certain property in Moretown, consisting of certain lands, dwelling houses, mills and mill-yards, together with the machinery, tools, lumber, and other personalty in said mills and yards, all of which was her sole and separate property ; that the said Mary there carried on the business of manufacturing lumber and grinding grain for herself and for customers ; that during all that time said Isaac had acted therein as the agent of said Mary, with her consent and authority, and as such had bought, cut and drawn logs, bought and ground grain, and sold meal and provender in the name and for the benefit of said Mary ; that at the special instance and request of said Mary, and at divers times during said period, the orator did certain work for her in and about said business, sold and delivered to her divers goods for sums agreed on, paid to her or to said Isaac in her behalf divers sums of money, and furnished pasturage for her cows, &c., for all of which the said Mary was indebted to the orator in the sum of four thousand dollars ; that during all that time said Isaac was, as the orator was informed and believed, wholly without property and irresponsible, and that all of those matters and things were performed and provided on the sole credit of said Mary and her property.

The bill further alleged that in 1875 one N. R. Spaulding was the owner of a certain mortgage on certain of the orator's lands, which he procured to be foreclosed ; that thereupon the said Isaac as agent of said Mary and with her authority and consent agreed with the orator that the orator should do certain work on the foundation and in the erection of one of said mills, furnish logs and lumber to be sawed and manufactured therein, and work in cutting and drawing the same, whereupon the said Mary should sell and dispose of said lumber and apply the proceeds, first, in payment of a bank note of the orator's, and, secondly, in redemption of said mortgaged premises ; that the orator relying on said

contract performed his part thereof, but that said Mary did not perform on her part, but refused so to do ; and that the orator had since that time furnished the said Mary many thousand feet of logs and lumber that she had sold for more than $1,500, for which the orator claimed that the said Mary should account.

The bill insisted that the estate of said Mary, both real and personal, should be charged with the payment of all the matters alleged, with interest and costs; and prayed for an ascertainment by the court of the sum due, for a writ of sequestration against said Mary's separate estate, and for general relief.

The answer of defendant Mary admitted her ownership of the property mentioned in the bill and the management thereof by the defendant Isaac—alleging that he was to buy logs, hire help, run the mills, sell lumber, and pay the help from the proceeds thereof, and that she supposed he had done so in her name, but denying that she had ever given him any general authority so to pledge her credit or to bind her real estate ; denied that she ever made any contract of any kind with the orator, either directly or indirectly, but admitted that said Isaac had employed the orator to some extent, and bought some logs of him, but alleged that the defendant believed there was nothing due to the orator therefor, but that if there was, the orator had no lien therefor on any of said real estate or on any of the personalty unconnected with the mills.

The answer of defendant Isaac was in substance the same as that of defendant Mary, except that it alleged in addition that defendant Isaac never used the name of his wife in any of his contracts with the orator, and that he had paid the orator for the logs by taking up a bank note, by assisting him to raise money to pay Spaulding, and by making other payments to him.

The answers were traversed and testimony taken.

It appeared that the charges on the book of account exhibited by the orator, were all made to M. A. & I. D. Robinson. The defendants claimed that the book was made for the purposes of the trial, and substituted for the true original book, and took certain testimony tending to prove it. It appeared also that the property in question was conveyed to the defendant wife while

Dale *v*. Robinson et al.

she was covert, by deed in common form, without anything therein limiting it to her sole and separate use ; that the defendants had been and still were living together on the real estate as husband and wife ; and that they had had children born to them.    There was evidence tending to prove that the orator performed the labor and sold and delivered the property charged at the request of the wife, and on her credit and the credit of her property, under such circumstances that she knew, or in the exercise of ordinary care might have known, that the labor was so performed and the property so sold and delivered.

The case was heard at the March Term, 1878, on bill, answer, and testimony, when the court, REDFIELD, Chancellor, in order that the law governing the case might first be settled, dismissed the bill, *pro forma*, with costs to the defendants.    Appeal by the orator.

*Heath & Carleton*, for the orator.

The wife's separate estate should be charged.    *Frary* v. *Booth*, 37 Vt. 78 ; *Albee* v. *Cole*, 39 Vt. 319 ; *Porter* v. *Bank of Rutland*, 19 Vt. 410 ; *Cardell* v. *Ryder*, 35 Vt. 47 ; *Child* v. *Pearle*, 43 Vt. 224 ; *Curtis* v. *Hapgood*, cited, 48 Vt. 228.

*J. A. & G. W. Wing*, for the defendants.

The wife had no right to convey her property without the husband's consent.    It follows that she could create no lien on it.    See Gen. Sts. c. 65, s. 2, c. 71, ss. 1, 14—18 ; Sts. 1870, No. 25 ; Sts. 1872, Nos. 40, 41.

But, at any rate, her estate cannot be charged with the payment of the orator's claim.    See BARRETT, J., in *Frary* v. *Booth*, 37 Vt. 87 ; *Hulme* v. *Tenant*, 1 Lead. Cas. Eq. 687 and notes ; *Yale* v. *Dederer*, 18 N. Y. 265 ; *Watkins* v. *Halstead*, 2 Sandf. 311 ; *Willard* v. *Eastham*, 15 Gray, 328 ; *Armstrong* v. *Ross*, 5 Green Ch. 109 ; *Buck* v. *Breckenridge*, 16 B. Monr. 482 ; *Peake* v. *LaBarr*, 6 Green Ch. 269 ; *Eldridge* v. *Preble*, 34 Me. 148 ; *Davis* v. *Mullett*, 34 Me. 429 ; *Brown* v. *Glens*, 42 N. H. 160 ; *Eaton* v. *George*, Ib. 375 ; *Aims* v. *Foster*, Ib. 381 ; *Whipple* v. *Gills*, 15 Am. Law Reg. 113 ; *Elden* v. *James*, 5 Reporter, 106.

The opinion of the court was delivered by

Ross, J.   The orator in the bill states that since January, 1867, the defendant Mary A. Robinson, then and still the wife of the defendant Isaac D. Robinson, was and still is the owner and possessor of certain personal and real property in Moretown, as her sole and separate property, which was managed and operated by her husband as her agent and for her benefit; that the real estate consisted of lands, houses, saw and grist mills, in the latter of which she manufactured lumber and ground grain for herself and others ; that the orator during said time has worked for her on said mills, and sold her lumber and other property, which went for the benefit of her separate property, on her sole credit and the credit of said property ; that during all said period, I. D. Robinson was destitute of property and wholly irresponsible ; and claiming that her separate property should be charged with the payment of such indebtedness from her to the orator.   The defendants have answered separately.   They admit that she is the owner of the property specified in the bill.   She admits that during the time stated in the bill I. D. Robinson has managed the property as her husband, has run the mills, bought logs and sold lumber, and she supposes the business has been done in her name. She denies that she has ever contracted with the orator person- ally, directly or indirectly, or that she has ever authorized her husband to pledge her credit so as to bind her real estate.   He makes a similar denial.   He admits that he has run the mills in her name for the support of the family.   She avers he was to hire help, buy logs and sell lumber, and pay the help out of the avails of the lumber sold.   Both admit that the orator has worked on the mills and furnished logs or lumber, &c., but deny any ex- isting indebtedness to him for the same.   There is no denial of the insolvency of the husband.

The orator's charges stand on his book to M. A. & I. D. Rob- inson.   Whether the book is original, or substituted since the charges accrued, we do not consider material to the solution of the questions involved in the case, except so far as his credibility as a witness is thereby affected.   The deed conveying the prop- erty to Mary A. Robinson is in common form.   It contains no

limitation that it shall be held to her sole and separate use. It was made to her while covert. It does not appear whether the purchase-money was property set apart to her sole and separate use, further than it was money which the husband allowed her to have, control, and invest in the real estate as she did invest it. The defendants have been and still are living together on the property as husband and wife. They have had children born, so that on her death he would be entitled to the use of her real estate as tenant by the curtesy. From the evidence in the case, notwithstanding the denial in the answers, and the rule that a responsive answer must be overcome by more than the testimony of one witness, we are satisfied that the orator performed the labor charged at the request of the defendant wife, and that he performed the labor and sold and delivered the other property charged on the credit of the wife and of her property under such circumstances that she knew, or in the exercise of ordinary care and prudence ought to have known, that the labor was so performed, and the lumber and other property so sold and delivered.

The question presented is, whether these facts entitle the orator to the relief prayed for. In equity the wife is treated as a *feme sole sub modo*, at least in regard to her separate property. In England the Court of Chancery has treated a married woman in regard to her separate property more nearly as a *feme sole* than have the Courts of Chancery in the United States. There, the courts have treated her general engagements, without regard to whether they have been beneficial to her or her separate estate, or contracted in its management, as a general charge upon the personal property of her separate estate and the rents and profits of her real estate. As stated by Lord THURLOW in *Hulme* v. *Tenant*, in 1 Lead. Cas. Eq. 394, " determined cases seem to go thus far, that the general engagement of the wife shall operate upon her personal property, shall apply to the rents and profits of her real estate, and that her trustees shall be obliged to apply personal estate and rents and profits when they arise to the satisfaction of such general engagement ; but this court has not used any direct process against the separate estate of the wife, and the manner of coming at the separate property of the wife has been

by decree to bind the trustees as to the personal estate in their hands, or rents and profits according to the exigencies of justice or engagement of the wife, to be carried into execution." Where there was no trustee of her separate estate appointed in the instrument creating the estate, the court has treated the husband as trustee for the purpose of enforcing her general engagements against such estate. Her separate real estate was not allowed to be taken on her general engagements, as by the laws of England real estate, with some few exceptions, could not be taken in satisfaction of debts. Since by reason of the disability of coverture she could not bind herself by promise or contract and was only treated as a *feme sole ex necessitate*, in regard to property held to her sole and separate use, the court rendered no decree binding or operative against her personally. In most cases the instruments creating the separate estate empowered her to dispose of the same by appointment in writing. The *jus disponendi* has attached where there is no limitation to the contrary imposed by the instrument creating the estate. The undisposed-of real estate settled to her separate use of which she is seised in fee, descends to her heir subject to the right of the husband as tenant by the curtesy. See notes to *Hulme* v. *Tenant, supra.* The Courts of Chancery in this country generally have not followed the leading of that court in England so far as to make the wife's general engagements a charge npon her separate property.

The subject has engaged the attention of, and been very ably discussed by, many of the state courts. The results arrived at are far from harmonious. In South Carolina, Ohio, Pennsylvania, and some other states, it is held that a married woman is not for any purpose to be treated as a *feme sole* in regard to her separate estate, and that she has no power to deal with or charge the same except, and only so far, as the power is given by the instrument creating the estate; and where such power is given, it must be strictly followed, to operate as a charge upon such estate. She is not regarded as having any power over such estate by virtue of its being held to her sole and separate use, and all her dealings in regard to such estate are considered in the light of the execution of a power conferred by the instrument creating the

estate. In other states the court has so far treated a married woman as a *feme sole* in regard to her separate estate that whenever a clear intention on her part to charge such estate is shown, without regard to whether the debt was contracted for her benefit or that of the estate, or as a mere surety or accommodation endorser, payment has been enforced therefrom. But the doctrine more generally adopted in this country is that announced by the court in *Yale* v. *Dederer*, 18 N. Y. 265, which is a leading case on the subject, and in which, on full discussion, it is held that equity recognizes a married woman's debt, and charges it upon her separate estate, not on the ground that the contracting of it is of itself an appointment or charge, but because when contracted on the credit of the separate estate, or for its benefit, or that of the woman, it is just that the estate should answer ; and that when the married woman is a mere surety, equity will not enforce against her a promise which is void at law, and in such case her separate estate can only be charged by virtue of some instrument for that express purpose. Among other leading cases in this country on this subject are the following : *Willard* v. *Eastham*, 15 Gray, 328, in which the authorities are reviewed, and HOAR, J., says : " Her general personal engagement will not of itself affect her separate property, and therefore where creditors do not claim under any charge or appointment made in pursuance of the instrument of settlement, they must show that the debt was contracted either for the benefit of her separate estate or for her own benefit upon the credit of the separate estate, and our conclusion is that when by the contract the debt is made expressly a charge upon the separate estate, or is expressly contracted upon its credit, or when the consideration goes to the benefit of such estate, or to enhance its value, then equity will decree that it shall be paid from such estate or its increase to the extent to which the power of disposal by the married woman may go. But where she is a mere surety, or makes the contract for the accommodation of another without consideration received by her, the contract being void at law, equity will not enforce it against her estate, unless an express instrument make the debt a charge upon it." *Burch* v. *Breckinridge*, 16 B. Monr. 482, in which SIMPSON, J., giving

Dale *v.* Robinson et al.

the opinion of the court, after stating that a married woman cannot at common law contract as *feme sole*, nor as such sue or be be sued, says : " That being the legal rule, courts of equity acting in conformity with it have held that the wife cannot bind herself personally, nor bind her separate estate by her general engagements. Courts of equity, however, as a consequence of the doctrine established by them that a married woman may have and enjoy separate estate, enable her to deal with it, alien and encumber it when she shows an intention so to dispose of it. So far as the separate estate consists of land, it cannot be made liable by a verbal contract." *Armstrong* v. *Ross*, 20 N. J. Eq. 109, a leading case in that state, in which the chancellor uses the following language : " If a married woman having a separate estate contracts debts for the benefit of her separate estate, or for her own benefit on the credit of her separate estate, although she will not be held liable, or any decree made against her personally, these debts will be declared a charge upon, her separate estate, and payment enforced out of it." It was also held in that case that such debts are not a lien upon such estate until made so by decree of court. In *Peake* v. *LaBarr*, 21 N. J. Eq. 269, the bill sought to charge the wife's separate real estate held under the married women's act of 1852, with the payment of a note made by her husband and endorsed by her for his accommodation. It was held that for the payment of such a debt she could charge her separate real estate only by a mortgage executed according to the laws of the state. The chancellor says : " The courts of this country have declared the estates of married women held under these acts to be liable for debts contracted by them for the benefit of these estates, or for their own benefit on the credit of these estates. But they go no further than this." Citations from other and more recent decisions might be multiplied *ad libitum*, but these will suffice to show the general drift and ground of the decisions in this country. In this state the cases of *Frary* v. *Booth*, 37 Vt. 78, and of *Partridge* v. *Stocker*, 36 Vt. 108, touch upon the rights of creditors against the separate estate of married women in view of the facts presented by those cases, but not with reference to the precise question presented by the case at bar.

The real estate in *Frary* v. *Booth* was devised to the defendant, who was a married woman abandoned by and living apart from her husband. The debt was contracted by her for the support of her family and attempted to be secured by a mortgage of the farm executed by her alone. The mortgage was upheld as a valid charge upon the property, though defectively executed. The wife in *Partridge* v. *Stocker* had been allowed by her husband to carry on the millinery business as a *feme sole* in her own name and on her personal credit. The debt was contracted by her in making purchases for the business, and was enforced against her stock of goods, notwithstanding her husband had sold and assigned them to the defendant. In a recent case heard at the last term of the Supreme Court for Windsor County, the question of how far and when the Court of Chancery will enforce the general engagements of a married woman against her separate property was discussed, but no decision has yet been announced. In that case the court was asked to enforce a debt where she was a mere surety, against such estate.

We are therefore untrammelled by any former decision of the court in the decision to be made in this case. From the best consideration we have been able to give to the question, and from the exhaustive review of all the leading cases on this subject both in England and in this country, in the notes to *Hulme* v. *Tenant, supra,* contained in the Leading Cases in Equity, we think it is the better established doctrine that a married woman is only *sub modo* a *feme sole* in dealing with her separate estate ; that her debts contracted in its management and for its benefit, or for her benefit on the credit of such estate, in equity, will be enforced against such estate, whether the same consists of personal or real estate, unless the instrument creating such estate protects it against being charged with such debts ; but that her general engagements not thus connected with and growing out of her separate estate, being void at law, will not, in equity, be enforced against such estate, unless they are legally made a charge thereon, by a duly executed mortgage, if the separate estate to be charged be real estate, and by a pledge and delivery of the property pledged if the separate estate consist of personal property. The

claims sought to be enforced by the orator fall within the class first named. The orator's work in erecting one of the mills on her estate went to enhance its value permanently ; the lumber was bought in her name to be manufactured in her mills, and the profits, if any, legally accrued to her ; the pasturing was for her cows. That she allowed the profits arising from the manufacture of the lumber and the income from the cows to be used in the support of the family, can make no difference. She had the right to give them to her husband if he were of sufficient pecuniary ability to support the family, which he was legally bound to do. If by reason of his pecuniary inability she was compelled to allow them to be so used, they were used for her benefit in that they went for her own support. It is manifest that the entire debt was contracted on the credit of her property. That the charges were made jointly to her and her husband does not defeat the orator's right to have them charged upon her property. The indebtedness charged on the wife's separate property in *Hulme* v. *Tenant,* was against both husband and wife, but created on the credit of the wife's separate estate.

But it is contended by the defendants that the right of disposal of the property sought to be charged is not vested in the defendant wife. If not in her, it is difficult to determine its resting place. The conveyance is in fee absolute to her. By the conveyance she is not limited in the *jus disponendi.* Her husband has no power to dispose of or in any way incumber it. His creditors cannot seize the rents, issues and products of her real property in satisfaction of their debts, nor any money due arising from its sale. Gen. Sts. c. 71, s. 18. She may devise it by will. Section 17. If he abandons her she may be allowed to sell and convey the same in her own name on application to this court. Section 1. If he ill use her, on petition to the chancellor she may be allowed to live separate and apart from him, and enjoy her real estate for her sole use and benefit. However much he may improve her estate by his labor and management, his creditors can levy upon no part of the improved estate nor of its rents and products. *White* v. *Hildreth,* 32 Vt. 265 ; *Webster* v. *Hildreth,* 33 Vt. 457. It is true that by reason of the disability of coverture, he must

join in the deed conveying the same. On the disability ceasing, her power of disposal is complete. The title being in her, that conveyed during coverture must issue from her. He is made a party to the conveyance the same as he is to a suit for the conversion of or injury to her separate property by reason of the legal fiction which merges her existence in his.

In courts of equity, however, for many purposes, and especially for the protection, management and enjoyment of her separate estate, the wife is recognized as having a separate legal existence. Its powers may be invoked in her behalf against the husband's encroachments on her rights. Hence in the forum of equity the statute requiring him to join in the conveyance of her real estate can hardly be held to be a limitation upon her *jus disponendi* of the same. The only right or interest in the wife's real estate which the statute has left in the husband, is that of residing on it with her, if she sees fit to live upon it, and of occupying the same after her decease as tenant by the curtesy; and it is doubtful if the latter attaches to such of her real estate as she disposes of by will. But if it does attach, we think it should be no bar to the enforcement of a debt against such estate on which he is jointly liable with her. It but allows the taking of his possible interest in expectancy, in satisfaction of a debt on which he is jointly liable. The statute has so far stripped the husband of any beneficial interest or right in or to the real estate of his wife, that such estates more nearly resemble estates held to her sole and separate use than any other known and well-defined estates. As we have before said, in England, the husband takes as tenant by the curtesy so much of the wife's strictly sole and separate real estate as remains undisposed of at her decease. He would also in this State. Hence the fact that this right might attach to the defendant wife's lands in favor of the defendant husband in this case, cannot defeat the right of the orator to have his debt charged upon and enforced against the estate in question, if the debt be of such a character that it could be enforced in the same manner against her strictly sole and separate estate. By the provisions of the statutes of this State real estate held to the wife's sole and separate use can only be conveyed by the joint deed of the hus-

band and wife, and is also subject to his right as tenant by the curtesy. The same is true in most of the other states in which it has been held that such estates may be charged with the payment of her debts contracted for the benefit of such estate, or for her benefit on the credit of the estate. The objection against making the orator's debt a charge upon and enforcing its payment out of the wife's real estate arises wholly from the technical disability of her coverture. No one has any present interest in her real estate to be protected by the interposition of this disability, except herself and her husband. Being allowed by the statute and in equity to hold the title to and have the use of real estate, as an incident thereto, and *ex necessitate,* in equity, she is allowed to contract for its management and improvement on the credit of the estate, otherwise, if the husband be without credit, or if, as he may, he refuse to use his credit for that purpose, the estate might run to waste, and she be deprived of all beneficial enjoyment thereof. Hence it would be inequitable to allow her to take advantage of this technical disability to defeat the orator from recovering payment for his labor bestowed upon, and for property sold for the benefit of, her real estate, at her request and on the credit of such estate. And the husband, if he has under the statute any such interest in her real estate as might in certain events allow him to take advantage of this disability—which is at least questionable—by consenting to and acting as her agent in the entire transaction out of which the orator's debt arose, has waived the same, and it would be inequitable to allow him now to set up and take advantage of the disability of his wife's coverture, especially when by such allowance the wife would reap almost the entire advantage to be derived therefrom.

The result is, the decree of the Court of Chancery, *pro forma,* dismissing the bill is reversed, and the cause remanded, with a mandate to that court to refer the cause to a master to ascertain the amount due the orator on the claims set forth in the bill and testimony, and to enter a decree for the orator for the payment of such sum from the separate property of the defendant wife, to be enforced by any proper process.