Hon. H. HENRY POWERS,
Hon. WHEELOCK G. VEAZEY, } Assistant Judges.
Hon. JOHN W. ROWELL,

---

## JOANNA S. SARGEANT *v.* JOHN L. FRENCH AND ELIZA-BETH C. FRENCH.

### [IN CHANCERY.]

*Married Woman's Estate, when Held to Pay her Debts.*

1. The debts of a married woman, (in this case a milliner,) contracted in the management of her separate estate and for its benefit, or for her benefit on the credit of such estate, in equity, will be enforced against such estate, whether the same consists of personal or real estate, unless the instrument creating such estate protects it against being charged with such debts.
2. But the *credit must be given to the estate, and not to the individual;* and the report must show this.
3. When a debt is thus contracted by the wife for the benefit of her estate, and on the credit of such estate, &c., her estate is held, though the note was signed by both herself and her husband.

4. And in such a case the wife will not be heard to claim that she gave the money to her husband; and that it was a fraud on her part, as a reason for not charging her estate.

5. The court, in view of the circumstances of this case, refused to recommit a report made under the act of 1878, (s. 724 to 731, inclusive, R. L.,) when the master, though requested to do so, had neglected to file some portions of the evidence; because, by the said statute, a reference is to be tried by the master upon oral testimony; and, then, it did not appear that there was any order of the court that the testimony should be filed; or, that the master kept minutes of the testimony.

HEARD on bill, answer, master's report and exception thereto, at the December Term, 1881. TAFT, Chancellor, ordered and decreed that the defendant, Elizabeth C. French, pay to the oratrix the sum found due by the master; viz., $313.21, with interest, out of her separate estate, and that the property which was sequestered by order of the court be charged with the payment of this order.

The master found and reported as follows:

The defendants, on the 2d day of July, 1877, and for some years prior, and ever since, have been husband and wife. The said Elizabeth on said day was, and for some years prior thereto had been, and ever since has carried on the millinery business in said Chester on her own account as a *femme sole* trader, separate from and independent of her husband, and was the owner and possessor of considerable property in her own right during all that time. The said John L. during the same time until January, 1879, was in trade in the same building, separate from his wife. The said Elizabeth as a *femme sole* had contracted debts and given notes in her own name, without her husband, and had also signed notes with and for her husband, in his business; in some instances without reading them or knowing their contents. On the 2d day of July, 1877, the defendant, John L. French, wrote a note as follows:

"Chester, July 2 1877.

"For value received we promise to pay Mrs. Sargeant or bearer, two hundred on demand, with interest annually.

JOHN L. FRENCH."

The said Elizabeth also signed the note, Elizabeth C. French; and in company with her husband's brother, Elliot French, went to the house of Abram Dodge, some four or five miles distant, and borrowed of the oratrix, Joanna S. Sargeant, three hundred dollars, representing to Mrs. Sargeant that the money was for

25

herself, to be used by her in her business; that she had separate property of her own and would see that she had her pay. Mrs. Sargeant knew that she was carrying on business as a sole trader, and believed her to be possessed of sufficient property to meet all her liabilities, and lent the money on her credit. As the name of John L. French was upon the note, the master does not find whether or not the loan was wholly upon the credit of the said Elizabeth. The said Elizabeth borrowed the money intending to let her husband have it, and did let him have it. And it did not appear that any part of it was ever used in her business.

It was ascertained before the loan was made that the word "dollars" was wanting in the note, and the said Elizabeth requested Abram Dodge to insert the word "dollars," which he did. Mrs. Sargeant had three hundred dollars to loan, and the said Elizabeth crossed the word "two" in the note and wrote above it the word three. It did not appear who wrote "J. S." after "Mrs." but it was written. . . . . .

The money endorsed, $18, was paid to Abram Dodge, agent for the oratrix, by the said John, and endorsed by him. The said Elizabeth had no express authority from the said John to alter the note. The circumstance of the payment of the interest by the said John L. had no tendency to show to whom the loan was originally made. The note was proved by George L. Fletcher against John L. French's estate in bankruptcy as a special favor to Hugh Henry, and without the direction or knowledge of the oratrix; and the assignee in bankruptcy paid to Abram Dodge, agent for the oratrix, the dividend thereon, $37.44, in June, 1879.

By direction of said Dodge a suit was commenced against the said John L. on said note, and a horse was attached thereon as the property of the said John L., which suit has been discontinued. The oratrix never called on either of the defendants to pay said note, otherwise than by this suit and the suit at law against said John L. above referred to.

The master does not deem it within his province to report testimony; and does not report any fact mentioned in the request, other than is contained in the above report. The master returns his minutes of testimony as requested. The master finds that there is due from the said Elizabeth C. French to the said Joanna S. Sargeant towards the money so loaned, as above, including interest to May 24, 1881, $313.21.

### EXCEPTIONS TO MASTER'S REPORT.

2d. Because the master refuses to report upon any fact or request asked for by the defendants, (with one exception,) though

such facts are material to the issue in the case and some of them entirely undisputed by any evidence, and substantiated by positive testimony; of such character are the 2d, the last part of the 3d, the 5th and 6th requests.

3d. Because the master finds negatively upon that part of the 3d request which asks that the master find affirmatively "that Mrs. French carried and delivered the money to John L. French, who used and employed it in his own business, and no part of it was ever used by the defendant, Elizabeth C. French, in her business or to her benefit." Upon this point, Mrs. French testified as follows: "As soon as I got out of the carriage, or before, I handed the money to Mr. French. I never had or used any of that money; never saw it afterwards." John L. French testified as follows: "I received three hundred dollars, the consideration of that note; I employed that money in my own business." No testimony whatever was offered to negate this, and yet the master fails to find this undisputed and material fact.

4th. As to the 6th request, Mrs. French testified in substance that from the date of the note up to the time of the failure of the defendant, John L. French, the oratrix dealt with her, bought goods of her, and yet never mentioned the note, but paid for the goods. Against this the oratrix offered no evidence or denial, and yet the master refuses to find this material fact.

5th. Because the master, not content to find facts, undertakes to argue them to the court, as when he finds "the circumstance of the payment of the interest by the said John L. has no tendency to show to whom the loan was originally made. It was the master's province to report "the circumstances of the payment of the interest by John L.," and allow the solicitors of each party to argue the "tendency," and the chancellor to weigh the facts.

6th. Because the master refuses to report the testimony which he is specially asked to report in request No. 4, as we claim that the testimony of the oratrix and her witnesses fixes the fact that Mrs. French signed as surety and that they so relied upon her signature *after* the money was in her hands. The oratrix, as to this, testified substantially as follows: "She had the money in her hands; she took the money in her left hand and raised it up and told several little stories." "I regarded her saying she would pay it as security." Abram Dodge, another of oratrix's witnesses, testified substantially as follows: "Mrs. French held up the money in her hand, and said she had money in her own right and we should not lose it." Mrs. Augusta B. Dodge, oratrix's daughter, testified substantially the same; all of them fixing her

assurance as after she had the money, which conclusively shows that they regarded her, the defendant Mrs. French, as surety.

7th.   Because he refuses to report in accordance with request 5, the evidence upon which is too lengthy to be here incorporated.

8th.   For other and sufficient reasons apparent upon the face of said report.

We therefore request that the cause be re-committed to a new master to find and report upon the requests of defendants which are attached to and made part of the report; or that the case be heard in full by the chancellor upon the testimony had before the master, and ask leave to refer to the testimony on file.

## DEFENDANTS' REQUESTS.

We request the master to find and report the following facts:

1st.   That the defendant, John L. French, on the 2d day of July, A. D., 1877, sent his wife, the defendant Elizabeth C. French, to borrow of the oratrix two hundred dollars, for his (said John L. French) own use, and gave her a note to carry to the oratrix.

2d.   That the oratrix and her witnesses claimed that Elizabeth C. French, when she asked for the money, said her reason for borrowing it was that she had a bank note to pay that day, and that the fact was that she had no bank note or any other note due that day, but that the defendant John L. French had.

3d.   That the note was changed from $200 to $300 by Mrs. French, that she received the money and carried and delivered it to John L. French, who used and employed it in his own business, and no part of it was ever used by the defendant, Elizabeth C. French, in her business or to her benefit.

4th.   That the defendant, Elizabeth C. French, disclosed her agency to the oratrix at the time the money was borrowed. That the oratrix understood Mrs. French was borrowing the money for John L. French; that the oratrix asked for and talked about security, and whatever credit was given to the defendant, Elizabeth C. French, was given to her as surety upon said note, and as indicating this we specially ask the master to include in his report the testimony of Mrs. Sargeant, Mr. Dodge and Mrs. Dodge, as to what Mrs. French said about paying the money, after she had passed the note to them and had the money in her hand.

5th.   That the fact that Mrs. Sargeant, from her own testimony during the talk there, kept speaking about security and yet asked no mortgage on property, or any additional name to that of Mr. and Mrs. French.

6th. That the oratrix bought goods of the defendant, Elizabeth C. French, from time to time between the execution of said note and the failure of John L. French, and paid her for same but never called upon the defendant, Elizabeth C. French, to pay any part of said note, and never in any way intimated to her that she expected her to pay said note or any part thereof, until this bill in chancery was brought after the failure of defendant, John L. French.

7th. We request the master to attach these several requests to his report before filing, and also to file in the office of the clerk of the Court of Chancery his minutes of testimony taken at each hearing in the case, for the use of the solicitors of each party, should the court allow their use in the hearing of the case.

*Hugh Henry*, for the defendant.

Courts of Chancery in this State have thus far been extremely loth to charge the separate estate of a *feme covert* with any debts and obligations; and the farthest they have yet extended their decisions in that direction has been only to that class of cases where the debt was contracted for necessaries of the family of the *feme covert*, or was used for the benefit of her separate property; to this extent and this extent only the courts have charged her separate estate. *Brown* v. *Estate of Sumner*, 31 Vt. 371; *Frary* v. *Booth*, 37 Vt. 78; *Priest, Barber & Co.* v. *Cone*, 51 Vt. 495.

The courts have regarded a married woman who conducts a separate trade from her husband, and has a separate property invested in that trade, as holding that property for the special benefit and protection of creditors whose funds or goods have been used by her in that business. *Partridge* v. *Stocker*, 36 Vt. 108.

The wife's estate is not held unless the debt was contracted by her for her benefit, or the benefit of her estate, and *on the sole credit* of her estate. *Dale* v. *Robinson*, 51 Vt. 20; *Priest, Barber & Co.* v. *Cone*, 51 Vt. 495; Jones on Mort. 1 s. 109; 18 N. Y. 265; *Rowan* v. *State Bank*, 45 Vt. 160, 191 and 195.

The chancellor, therefore, should have allowed the defendants to refer to the testimony on file to show affirmatively that the master had found at least one fact that was not warranted by the evidence; viz., that Mrs. French " represented to Mrs. Sargeant that the money was for herself to be used in her business." In no

other way than by reference to the testimony could the defendant, Elizabeth C. French, avail herself of her right to show an erroneous finding of facts. The duty of the masters, under s. 728, R. L., is " to make a full report of the facts found by them material to the cause." This the master in this case not only did not do ; but refused to do it even after special request. And the requests themselves sufficiently indicate the *materiality* of the questions of fact to be passed upon. It is no excuse that the master might say, he did not deem them material. They indicate for themselves that they were material.

And the master had no right to report a *part* of the material facts and *omit* the other material facts, and keep them away from the consideration of the chancellor. The statute says expressly his report must be full. The master has no right to *dodge* questions of fact as " that he does not find whether the loan was wholly on the credit of the defendant Elizabeth C." " That it did not appear that any part of it was ever used in her business." It was his province and duty to find positively on these questions, and a reference to the testimony, had it been allowed, would have shown conclusively that the loan was *not* wholly on the credit of the defendant Elizabeth C. It would also have shown that it *did* appear that no part of it was ever used in her business.

*Geo. L. Fletcher*, for the oratrix.

Mrs. French, in contracting this debt, obtained personal credit upon her own separate property, thereby making it a charge upon her own estate, and in equity she ought to pay it.

To hold that she is not liable in this case because she let her husband have the money after borrowing it, as the report shows she did, would be giving license to married women to practice deception and fraud.

In *McVey* v. *Cantrell*, 70 N. Y., 295, it is held where a married woman gave her note for money borrowed avowedly for her separate estate, that her separate estate was bound for the payment of the note, though the money was in fact applied to other purposes. 18 N. Y. 265 ; 51 Vt. 27 ; 15 Gray, 328 ; 7 Paige, 112 ; 37 Vt. 84.

The opinion of the court was delivered by

VEAZEY J. I. The essential principle of law controlling this case has so recently been discussed and announced by this court that it is only necessary to refer to one or two later cases to find all that is needful to be said upon a question about which there has been considerable conflict in the courts of England and of the different States of this country.

In *Dale* v. *Robinson et al.*, 51 Vt. 20, the court held that the debts of a married woman contracted in the management of her separate estate, and for its benefit, or for her benefit on the credit of such estate, in equity, will be enforced against such estate whether the same consists of personal or real estate, unless the instrument creating such estate protects it against being charged with such debts. In the same volume in *Priest, Barber & Co.* v. *Cone et al.*, p. 499, it is stated that contracts entered into by a married woman to obtain necessaries for herself and family, or for her separate estate, and upon the credit of such estate, will be enforced in equity against it, unless fettered by limitations and conditions in the grant to the wife.

It will be observed that one of the requisites adhered to by this court has been that the credit must be given to the estate, not to the individual.

II. One question in this case is whether the report shows that the money was loaned on the credit of the estate of the defendant Elizabeth, or on her individual credit. The expression, "lent the money on her credit," used in the report, indicates that it was an individual credit; but taking the whole report together, we think the fair import is that the money was loaned on the credit of the estate. It states that the wife did millinery business on her own account, separate and independent of her husband, he having a different business; that she owned considerable property in her own right; contracted debts and gave notes in her own name; represented to the oratrix that the money was for herself to be used in her own business, and that she had separate property of her own, and would see that this was paid; that the oratrix knew that she was carrying on business as a sole trader, and believed

her to be possessed of sufficient property to meet all her liabilities.

In *Priest, Barber & Co.* v. *Cone, et al., supra,* the findings, of the master as to the wife's separate property and representations were similar, and the language indicating an individual credit was nearly identical, viz : " relying on her promise and ability to pay," . . . . sold and delivered, etc., " but always on her credit." In that case the court say, " Mrs. Cone bought necessaries for her family and her farm, understanding that credit was given to her because she owned the farm and was responsible." The report there no more strongly shows that the credit was given to the wife *on account of her separate property* than it does here.

III. Further objection is made that the defendant Elizabeth did not use the money borrowed of the oratrix in her own business, but gave it to her husband. A sufficient answer is that she represented to the oratrix at the time of the loan that the money was for herself to be used in her own business, and it is apparent that the money was loaned with this understanding by the oratrix. *Mc Vey* v. *Cantrell,* 70 N. Y. 295.

The rule established in the Vermont cases, *supra,* requires that the debt must be contracted for the benefit of the wife or her estate ; but where the wife has obtained the credit on this ground, she cannot be heard to say that this was a fraud on her part, and that she diverted the money to other uses, as a reason for not charging her estate.

IV. The husband, John L. French's name was upon the note given for the money borrowed, and the master does not find whether or not the loan was wholly upon the credit of the said Elizabeth ; and this is claimed as a ground of defence. We understand by this that it does not appear but that the oratrix in making the loan regarded the husband's name and credit of some consequence. She might do that, and yet be entitled to a remedy against the wife's estate. The question is not what additional reliance or security she had, but did she in fact make the loan to

Sargeant *v.* French.

the wife on the credit of the wife's estate and understanding it was for her benefit? That question is settled by the report.

V. It is claimed under the exceptions to the master's report that the report should be recommitted, because certain requests to the master were not complied with by him. One request was that he should file certain portions of the evidence with the report. We understand that this case was referred under the act of 1878, sections 724 to 731, inclusive, of the Revised Laws. Such reference is to be tried by the special master upon oral testimony. The act does not require the master to write out the testimony; and it does not appear that any order was made by the court to that effect, or that the testimony should be reported, or that this master kept minutes of the testimony. The report, as we understand and construe it, covers the whole case. This is the second time this case has come to the Supreme Court. We do not think the defendants are entitled as a legal right, upon the case as it stands, to have the cause recommitted to this or another master, or that under the circumstances we should be warranted in recommitting it as a discretionary matter.

As to the other points of exception, it is not apparent that a compliance with the suggestions of the defendants in the exceptions would have so changed the report as to have warranted a different decree from that made by the chancellor.

Decree affirmed and cause remanded.