### JOHN B. FLETCHER v. ANNA M. BRAINERD.

#### January Term, 1903.

Present: TYLER, START, WATSON, STAFFORD and HASELTON, JJ.

Opinion filed June 4, 1903.

*Equitable lien—Married woman—Liability prior to passage of V. S. 2644—Effect of payment.*

One who, prior to the passage of V. S. 2644, loaned money to a married woman for the benefit of her real estate, which was used for that purpose, is entitled to an equitable lien on such real estate therefor.

Payments made on such debt from the property of such married woman, with her knowledge and consent, or that of her agent in the trans- action, are a recognition of the creditor's equitable rights, and will prevent the claim from becoming stale.

APPEAL IN CHANCERY.   Heard on the report of a special master, at the September Term, 1902, Franklin County, *Munson*, Chancellor.   Decree for the defendant.   The orator appealed.

*William P. Dillingham, Fuller C. Smith,* and *Alfred A. Hall* for the orator.

The money went to benefit the sole and separate estate of the defendant, and in equity it must respond for the debt. *Sergeant* v. *French,* 54 Vt. 384; *Dale* v. *Robinson,* 51 Vt. 20.

It being found that Herbert Brainerd was the agent of the defendant, the objection that the endorsements upon the note were not made by the defendant and were without her knowledge, falls to the ground.   *Lawrence* v. *Graves' Est.,* 60 Vt. 657.

The case does not present the elements of a stale demand. The endorsement of the dividends began before the statute had

run upon the note, and continued down to the commencement of this action. *Whipple* v. *Blackinton,* 97 Mass. 476; *Porter* v. *Blood,* 5 Pick. 54; *Haven* v. *Hathaway,* 20 Me. 345; *Buffington* v. *Chase,* 152 Mass. 534; Jones on Pledges, ss. 398, 400, 551.

The Court of Chancery will not, from lapse of time, raise the presumption of adjustment or payment, if the case furnishes evidence satisfactorily accounting for the delay. *Spear* v. *Newell,* 13 Vt. 288.

A demand on the note was essential to perfect the cause of action. Wood on Lim., s. 119; *Stanton* v. *Stanton,* 37 Vt. 411; *Smith* v. *Franklin,* 61 Vt. 385; *Blaisdell* v. *School Dist.,* 72 Vt. 63; *Poultney* v. *Wells,* 1 Aik. 180; *Little* v. *Blunt,* 9 Pick. 488; *Girard Bank* v. *Bank of Penn.,* 39 Pa. 92; *United States* v. *Wardwell,* 172 U. S. 48; *Payne* v. *Gardner,* 29 N. Y. 146.

Where delay in making demand was contemplated by the express terms of the contract, the demand need not be made within the statutory period. *Dougherty* v. *Wheeler,* 125 Ind. 421; *Taylor's Admrs.* v. *Whitman's Admrs.,* 3 Grant's Cas. 138; *Norton* v. *Ellam,* 2 M. & W. 461.

*C. W. Witters* for the defendant.

The case shows repeated demands made by the holder of the note on Herbert Brainerd, the agent of the defendant. These demands resulted in the payments of August 15, 1883, November 26, 1883, and May 8, 1884. So the claim is a stale one.

The payments of the dividends were not voluntary, and will not avail the orator. Rand on Com. Pap. 1622; *Woodruff* v. *Cook,* 73 N. W. 706; *Moffitt* v. *Carr,* 28 Neb. 403;

*Campbell* v. *Baldwin,* 130 Mass. 199; *Harper* v. *Fairley,* 53 N. Y. 442; *Buffington* v. *Chase,* 152 Mass. 534.

If a demand was necessary on the note in question before a suit could be brought, it should have been made within six years. *Stanton* v. *Stanton's Est.,* 37 Vt. 411; *Thall* v. *Mead's Est.,* 40 Vt. 540; *Smith* v. *Franklin,* 61 Vt. 388.

The Court of Equity should treat this claim as stale, and refuse aid in its enforcement. Pom. Eq. Jur., s. 419; *Preston* v. *Preston,* 95 U. S. 200; *Codman* v. *Rogers,* 10 Pick. 111.

TYLER, J. This bill is brought to enforce an equitable lien upon the defendant's dwelling-house by reason of the orator having furnished her two thousand dollars with which to make repairs thereon. The defendant contends that the Statute of Limitations has run upon the claim, and that it is a stale demand.

The master finds that in the year 1880 the defendant, Anna M. Brainerd, and her husband, occupied a house and lot situated in St. Albans, owned by Mrs. Brainerd as her separate estate; that they desired to make extensive repairs upon the house, and found it necessary to borrow money for the purpose; that Mr. Brainerd applied to the orator for a loan of $2,000, explained to him the purpose for which the money was required, that the house was Mrs. Brainerd's, and offered the orator her note for the amount, saying that he would sign it as surety, and also turn over to the orator National Car Co. stock as security. The negotiations resulted in the orator making a loan of $2,000, and taking a note therefor, dated April, 1880, payable fourteen days after demand, with interest, signed by Anna M. Brainerd, and by her husband as surety. It bore the following indorsement: "I have deposited with J. B. Fletcher as collateral for the payment of this note

when due, twenty-seven shares of National Car Company stock, with full power to sell the same without notice, in case of non-payment of this note at its maturity.

(Signed) A. M. B."

No question was made at the trial but that this stock was Mrs. Brainerd's property.

It is found that in negotiating the loan Mr. Brainerd acted for himself and his wife, and that the orator so understood the transaction, but he had no conversation with Mrs. Brainerd upon the subject. As the homestead was in her name, and the stock was then valued at par, he considered that the loan was well secured.

The master, in effect, finds that the $2,000 was used by the defendant in repairing her house; that the orator has held the note ever since it was given as his own property, and the Car Company stock as collateral security for its payment; that he never made any demand on the defendant personally for payment until March 12, 1900, when he made a formal demand in writing.

The following payments were made by Mr. Brainerd: $200 Aug. 15, 1883; $100 Nov. 26, 1883; $138 May 8, 1884; and, beginning Jan. 1, 1885, the quarter yearly dividends upon the stock down to April 1, 1901, were paid to the orator by Mr. Stranahan, as treasurer of the Company, and by him indorsed upon the note at the orator's request.

In 1884 and 1885 the orator several times requested Mr. Brainerd to pay the note, which requests not being complied with, the orator told him that he must have the dividends on the stock, and they were paid to him, as above stated.

The master submits the question to the Court, whether, upon the evidence which he recites, Mr. Brainerd was the agent of his wife in the transactions about the loan. The evi-

dence clearly shows that fact; indeed, the defendant's brief and argument proceed upon the ground that Mrs. Brainerd, in allowing her husband to negotiate the loan, receive the money, deliver the note to the orator, and control the dividends on the stock—the certificates for which she had given him to deliver to the orator—held her husband out to the orator as her agent, and that the orator recognized him as such.

It is said in the defendant's brief that, during the entire twenty years, Mr. Fletcher acted upon the presumption that Herbert Brainerd was the defendant's agent; that whatever demand was made upon him for payment upon this note, which was given, as claimed, for money to use in the improvement of the defendant's property, was a demand upon the defendant; that when the orator notified Brainerd that he should thereafter take the dividends on the Car stock, it was notice to the defendant. This is in accordance with the master's findings, though not expressly so stated by him. The defendant cites the general rule that notice to an agent, while acting within the scope of his authority, and in reference to a matter over which his authority extends, is notice to the principal.

The defendant concedes that, upon the master's findings, a demand made upon Mr. Brainerd was a demand upon her; but she insists that the payment of the Car stock dividends was made by the treasurer of the Company to the orator, and not by the defendant nor by her agent. We think, however, that the master's report must be construed to mean that when Mr. Brainerd, as agent of his wife, ceased making payments upon the note, and the orator said, "I will have to require the dividend upon the stock," the agent assented to it. There is nothing in the report of the master, nor in the testimony that he submits, to indicate that the application of the dividends was not in accordance with both Mr. and Mrs. Brainerd's wishes.

It is found that Mr., Stranahan was the defendant's brother-in-law, her warm friend and adviser, and that in business matters he advised with her and her husband. He was treasurer of the company and the orator was its superintendent, and they occupied the same office-room. Mr. Stranahan knew that the orator had some money to invest, and suggested to him to make a loan to the Brainerds to enable them to make repairs upon their house; therefore Stranahan's handing the dividend checks to the orator was the natural sequence of the orator's requiring the payment of the dividends to himself. The master expressly finds that the payment of dividends to the orator was in consequence of his insisting that they should be so paid.

In this state of the case, the defendant contends that the indorsements were not voluntary, and that the Statute of Limitations had run upon the note before this bill was brought. It is the general rule that part payment is an implied acknowledgment of the existence of the claim upon which the payment is made, from which the law implies a promise to pay the balance. *Corliss* v. *Grow,* 58 Vt. 702, 2 Atl. 388. As the Court said in *Campbell* v. *Baldwin,* 130 Mass. 199: "The ground upon which a part-payment is held to take a case out of the statute is, that such payment is a voluntary admission by the debtor that the debt is then due, which raises a new promise by implication to pay it or the balance. To have this effect, it must be such an acknowledgment as reasonably leads to the inference that the debtor intended to renew his promise of payment."

In accordance with this rule it is held that where the debtor's property is sold on legal process and the proceeds applied upon the debt, it is not a voluntary payment, and will not pre-

vent the running of the statute. Any enforced part payment will not stay the statute. *Benton* v. *Holland,* 58 Vt. 533, 3 Atl. 322, and cases cited in the opinion. For the same reason, it is said that the weight of authority favors the rule that the creditor's application of the proceeds of security foreclosed by him, in payment *pro tanto* of the note or debt, does not operate as a payment by the debtor at that time so as to start the statute anew, because there is no voluntary affirmative act by the debtor implying a promise to pay the balance of the debt. 19 Am. & Eng. Ency. 328.

But the debtor's request to have payments applied or indorsements made upon his note need not be proved. It may be proved that he assented to the act after it was done, and his assent may be implied from his conduct and the circumstances attending the transaction. The fact that these indorsements were made is some, but not sufficient, evidence of a voluntary application of the dividends in payment of the note, and it has more weight because the first indorsement was made before the statute had run. *Bailey* v. *Danforth,* 53 Vt. 504; *Lawrence* v. *Graves,* 60 Vt. 657, 15 Atl. 342. That these dividends were received by the orator and indorsed quarterly for fifteen years, pursuant to the notice given by the orator to the defendant's agent, and without objection, are facts from which it may be inferred that the payments were voluntary.

In this view it is immaterial that the twenty-seven shares of stock were not available until the maturity of the note, for the dividends thereon were voluntary payments made with the defendant's assent, and prevented the orator's demand from becoming stale.

If the orator's case depended upon a contract existing between the defendant and himself, evidenced by the note, his demand of payment in 1884 and 1885 would have put the statute

in motion, and it would have run upon the note in six years and fourteen days after such demand, except for the application of the stock dividends.    But the case does not rest in contract.    The defendant was under the disability of coverture when she signed the note, and could not, under the law as it then existed, create a lien upon her separate property.    This the orator concedes, but bases his claim upon the fact that the loan was made and used to benefit the defendant's property, and contends that in equity the property is chargeable with the amount of the loan.

The rule generally adopted in this country is stated in *Yale* v. *Dederer,* 18 N. Y. 265, 72 Am. Dec. 503, and quoted with approval in the opinion in *Dale* v. *Robinson,* 51 Vt. 20, 31 Am. Rep. 669, that, "equity recognizes a married woman's debt, and charges it upon her separate estate, not on the ground that the contracting of it is of itself an appointment or charge, but because, when contracted on the credit of the separate estate, or for its benefit, or that of the woman, it is just that the estate should answer; * * * ."    The same rule is declared in *Willard* v. *Eastman,* 15 Gray, 328, 79 Am. Dec. 366, and cited in *Dale* v. *Robinson.*

The question is not whether the application of the dividends upon the note saved it from the statute, so that an action at law could be maintained upon it, but whether these payments, made, as it must be assumed, with the knowledge and consent of Mr. Brainerd, who acted for his wife in all these transactions, were in recognition of the orator's equitable right, so as to bring the case within the rule in *Dale* v. *Robinson, supra,* and *Sargent* v. *French,* 54 Vt. 384.    We think the case shows that the orator forbore the enforcement of his claim during all the time the dividends were received by him, and that the defendant, through her agent, assented to the ap-

plication of the dividends upon the note in recognition of such claim.

In this view, the Statute of Limitations does not apply to the case. We hold that, upon the facts found, the demand is not stale, and that the orator is entitled to have the amount due upon his note paid from the estate which was benefited by the money for which the note was given, and that he have an equitable lien upon said estate therefor.

*Decree reversed and cause remanded to the Court of Chancery, with mandate to that Court to enter a decree for the orator according to the prayer of the bill.*

