The Rensselaer & Saratoga Rail Road Company *v.* Miller & Knapp, Trustees ; and Cross Bill, Miller & Knapp, Trustees, *v.* The Rensselaer & Saratoga Railroad Company et als.

[In Chancery.]

*Trustee's Lien upon the Trust Property for Reimbursement of Expenses Incurred in the Execution of the Trust.*

Trustees have an inherent equitable right to be reimbursed all expenses reasonably incurred in the execution of the trust; and it is immaterial that there are no provisions for such expenses in the instrument of trust.

All such expenses are a lien upon the trust property; and the trustee will not be compelled to part with the property until such expenses are paid.

*Held,* that in this case the trustees had done nothing whereby they had lost such lien.

Rensselaer & Saratoga R. R. Co. v. Miller & Knapp, trustees.

THE case was this : The Rutland & Washington R. R. Co. was incorporated in this state, November 13, 1847, to construct and operate a road from Rutland to the New York state line, there to connect with the Troy & Rutland R. R. On June 24, 1850, it leased from the latter company the franchise and right to construct its road from the state line to Salem, N. Y.; and on June 17, 1852, it also leased from the latter company the residue of its road, extending to Eagle Bridge. The Rutland & Washington road made three mortgages as follows :

June 15, 1850, one for $250,000 to Daniel S. Miller and Shepherd Knapp, trustees, upon the road from Rutland to the state line. There was also a similar mortgage of the New-York portion of the road, which was not enforced.

November 1, 1852, one for $550,000, upon the road from Rutland to Salem, under which Jay Gould became sole trustee.

October 24, 1855, one for $1,200,000, upon the road from Rutland to Eagle Bridge, under which Benjamin E. Bates, Jay Gould, and Frederick E. Woodbridge became trustees.

The trustees under the third mortgage went into possession. The title to the Troy & Rutland road became vested in Jay Gould under a foreclosure in New York. The rights and property acquired by the Rutland & Washington in the state of New York, became vested in William T. Hart, under a series of judicial proceedings in that state. The Troy, Salem & Rutland R. R. Company was organized June 2d, 1865, under the laws of New York, and Gould and Hart conveyed to this company the road from Eagle bridge to the state line.

The Troy, Salem & Rutland Company became consolidated with the orators, June 15, 1865, by deed of that date, containing covenants of warranty ; and the orators have since operated the entire road from Eagle bridge to Rutland. Its title to that portion of the road between Rutland and the state line was acquired as follows :

In 1856, Miller and Knapp, trustees, brought suit in Rutland county, to foreclose said first mortgage. The company defended ; and in 1863 the supreme court adjudged the mortgage valid. See 36 Vt. 452. On April 22, 1865, a decree was made, stating the

Rensselaer & Saratoga R. R. Co. *v.* Miller & Knapp, trustees.

amount due so far as then ascertained, to wit, on 195 bonds, to be $338,137.07 ; and limiting the time for redemption to the 8th of June, 1865. No payment under this decree was made to the trustees. On November, 22, 1866, the then owners of said 195 bonds, organized a corporation called the Salem & Rutland Railroad Company. This company leased its road to the Troy, Salem & Rutland road on March 16, 1867, and afterwards released the last-named company from the covenants of the lease, in confirmation of the title of the orators. Meanwhile the claims of other of the bondholders under the first mortgage, were adjusted before a master ; and after a hearing before the supreme court (40 Vt. 399), a second decree was made Sept. 3, 1868, providing for payment of the further sum of $51,956.09, on or before Nov. 12, 1868 ; and also providing, that in case of payment by the defendants in said suit, to wit, Bates, Woodbridge, and others, trustees under said third mortgage, said defendants should be subrogated to all rights which would be acquired by the orators under said decrees in case of default of payment as decreed. No payment was made to the trustees under said decrees, but every bondholder was paid in full by parties entitled to redeem ; and all costs provided for by said decrees were also paid.

The trustees, Miller & Knapp, having moved in said suit for a writ of possession, this action was brought by the orator, then operating said road under title acquired as aforesaid, to enjoin further proceedings on the part of said trustees ; and for general relief. The orator offered in its bill to liquidate and discharge all legal or equitable liens upon the road in favor of Miller & Knapp, or any other persons, if any such existed. Miller & Knapp filed a cross bill, claiming a lien upon the road for their services and the services of their counsel. The specific claims made by them, as disclosed by the pleadings and evidence, were as follows :

1. $7,744.60 paid said counsel by D. M. Wilson, then a bondholder, in 1864.

2. $3,500 paid said counsel in 1864 by George F. Cobb, then also a bondholder.

3. $1,500 paid said counsel by Knapp in 1868, and subsequently.

Rensselaer & Saratoga R. R. Co. *v.* Miller & Knapp, trustees.

4. Further services of their counsel, H. E. Stoughton, deceased.

5. Services of Knapp as trustee.

Said trustees claimed that they were personally holden for the money advanced by Cobb and Wilson. It appeared that said foreclosure suit was brought by a committee of the bondholders, who controlled the suit until their bonds were purchased in 1864 by parties interested in perfecting the arrangement under which the orators obtained their title as aforesaid, and who retained their own counsel, and provided for their payment. Knapp had received a bond for $1000 for his services. Miller made no claim.

No application in regard to services of the trustees or their counsel, was made in connection with either decree; and no provision concerning the same was contained in the mortgage.

*Prout, Simons & Walker,* for the orator.

If the property had been redeemed by a payment of the mortgage, no ground would exist upon which either claim now made, could be enforced against the corporation or the property. Payment of the amount due on the mortgage, to the party entitled, constitutes a redemption. *Bell* v. *The Mayor,* 10 Paige, 49; *Franklin* v. *Gorham,* 2 Day, 142. And the mortgage is the only lien upon the road and property which the court can recognize. *Bellinger* v. *Shafer,* 2 Sanf. Ch. 297. The general rule is, that the mortgagee shall get nothing beyond the principal and interest of his debt. 1 Hilliard Mort. 454, 512. Even in the case of a mortgagee in possession, he cannot be allowed compensation for his care and management of the estate. 1 Hilliard Mort. 450; *Chapman* v. *Smith,* 9 Vt. 153; *Breckenridge* v. *Brooks,* 2 A. K. Marsh. 339. Or for clearing wild lands. 1 Johns. Ch. 385. Or for moneys paid out for insurance. 1 Hopkins, 283; *Saunders* v. *Frost,* 5 Pick. 259.

Again, a redemption by payment of a decree, cuts off all claims like those here presented. The case is, then, one of ordinary foreclosure. The claims made, if allowable, would be a charge against the fund; a loss which the bondholders must sustain. The extent of the charge or lien upon the mortgaged property is fixed by the decree. If anything more was to be claimed under

Rensselaer & Saratoga R. R. Co. v. Miller & Knapp, trustees.

the mortgage, the trustees "should have taken care" that the decree contained directions to a master to ascertain and make just allowances, &c. Hill Trust. 845–6, 852; *Hosack* v. *Rogers*, 9 Paige, 461. Both decrees have been paid in full. All bondholders have been paid the amount found by the decrees to be due them for principal and interest, and the costs have been paid to the solicitor of the orator, with interest. The redemption money having in every case been received by the party entitled, payment on the day fixed was waived, and the redemption is complete. *Converse* v. *Cook et al.* 8 Vt. 164; *Batchelder* v. *Robinson*, 6 N. H. 12.

The proceedings in the foreclosure suit, subsequent to the first decree, were inoperative to affect the title of the orator. Gen. Sts. ch. 28, §§ 103, 112; *Austin* v. *Rutland R. R. Co.*, 5 Vt. 215, 240, *et seq.*

Treating the second decree as a valid one, the trustees under the third mortgage, having substantially paid the decree by paying the amount found due upon all the bonds to the parties holding them, and costs, are by its terms subrogated to all the rights of the orators under said several decrees, and entitled to hold the mortgaged estate by the same title as is by said decrees conferred upon the orators in the event of a default of payment. They are therefore now entitled, if any one, to be let into the possession of the road : and can stand, not only upon their organization of the Salem & Rutland Co. under the statute, but also upon the language of the decrees. The above provisions of the decree are a waiver of all claims of the orators antagonistic thereto. The case shows that they were carefully inserted for the express purpose of making perfect and complete the title which is now claimed to be subject to further leins. The payment to the bondholders was with full knowledge of Knapp and his counsel; and it was a payment which the defendants in the foreclosure suit were entitled to make without notice to the trustees.

The trustees can look only to the fund, or the bondholders personally. Perry, § 933. If the trust fund is insufficient for the reimbursement of the trustees, they may call on the *cestuis que trust*, and recover of them personally reasonable compensation

Rensselaer & Saratoga R. R. Co. v. Miller & Knapp, trustees.

for the time, trouble, and money expended. Perry § 909; *Balch* v. *Hyham*, 2 P. Wms. 453; *ex parte* Chippendale, 4 De. G. M. & G. 19, 54; *Phene* v. *Gillam*, Hare, 9, 13. These charges do not follow the bonds, but the trustees must follow the bondholders for whose benefit the services were performed, and who received the money realized thereby. But if the trustees by their laches have lost their remedy against their *cestuis que trust*, that is no reason why the road should pay. *Towle* v. *Mack*, 2 Vt. 19. The property mortgaged belonged to other parties than the mortgagees, excepting so far as the mortgage deed provided by way of security to the bondholders. Nothing but taxable costs can be charged against it. *Union Ins. Co.* v. *Van Rensselaer*, 4 Paige, 87.

The services of counsel resulting in the first decree, were paid for by the bondholders, who about that time sold their bonds to the assignors of the present orator. No lien exists in favor of the trustees for their own services either before or after the first decree, or for their services and the services of their counsel after the first decree.

*E. W. Stoughton*, for Miller & Knapp and Cobb & Wilson.

The trustees, under the decrees of foreclosure, had a lien upon the mortgaged property for the payment of their services and of such sums as they had paid or become liable to pay in the execution of their trust.

Such lien has not been lost by the organization of the Salem & Rutland R. R. Co. Until the final decree of September, 1868, the bondholders could not lawfully form a corporation for the purpose of taking possession of and operating the road of the old company. Assuming, however, that the Salem & Rutland Co. was lawfully organized, it could acquire no greater or other rights as against the lien of the trustees, than were possessed by the bondholders thus organizing. In equity, and for this purpose, their right was the right which the new corporation acquired, neither more nor less.

The trustees, Miller & Knapp, are entitled to a fair remuneration for their services as trustees, and to be reimbursed all sums expended, and for payment of all liabilities incurred in the execution of their trust.

Rensselaer & Saratoga R. R. Co. v. Miller & Knapp, trustees.

The opinion of the court was delivered by

BARRETT, J.   It is apparent in the cause that the trustees, Miller & Knapp, held a position such as to entitle them to charge upon the subject-matter of the trust such compensation and reimbursement as they ought to have by reason of what they did and incurred in the administration of the trust.   See Perry on Trusts, §§ 760, 907, 909, 910.   They were holding their position for the behoof of all the parties interested in the subject of the trust; and, in the first instance, for the parties beneficially interested in the first mortgage, viz: the Rutland & Washington R. R. Co. mortgagor, and the holders of the bonds secured by said mortgage.   The primary object of having said trustees was, to enable the security to be created and rendered effectual for the bondholders.   The expenses of a trustee in the execution of the trust, are a lien upon the estate ; and he will not be compelled to part with the property, until his disbursements are paid.   Perry § 907.   If the trust fund is insufficient for such reimbursement, he may call on the *cestui que trust*, in whose behalf and at whose request he acted, and recover of him personally reasonable compensation for the time and trouble and money expended.   Perry § 909 ; Hill 578.   Trustees have an inherent equitable right to be reimbursed all expenses which they reasonably incur in the execution of the trust, and it is immaterial that there are no provisions for such expenses in the instrument of trust.   If a person undertakes an office for another in relation to property, he has a natural right to be reimbursed all the money necessarily expended in the performance of the duty.   Perry § 910. ' The costs of winding up a trust and distributing the money, and all expenses for documents, deeds, and other papers, must be paid from the trust fund.   *Ib.* § 933.   The trustee's lien cannot be allowed to control the estate in such manner as to destroy the trust ; but no conveyance will be ordered or allowed until he is repaid.   *Ib.* § 907.   The concurrence of a co-trustee is not necessary for the incurring of expenses, if the expenses are proper in themselves. *Ib.* 912.

We have not deemed it important to make a wider or more detailed citation of authorities, for the reason that those citations,

and the cases therein referred to, answer all the exigencies of the case and the occasion.

The foregoing citations, with the cases referred to, state, and give practical illustration of, the established doctrines of the law applicable and controlling in the present case.

The property and rights conveyed to the trustees by the mortgage, constituted the value of, and ultimately became, under the foreclosure, the substitute for, the bonds. That property, in its connection with the franchise, became charged with the *lien* of the trustees ; and it remains so charged, unless the trustees have done something that has operated a discharge of it. What has been done by the *cestuis que trust* since the foreclosure, in the matter of transferring the bonds and the rights appertaining thereto,—what has been done in the matter of organizing a new corporation by the bondholders in virtue of said foreclosure, and taking possession of the property, and transferring the possession and right of possession to Rensselaer & Saratoga R. R. Co,.—cannot, of itself, relieve the trust property of the trustees' lien. All this has been done by, and in the right of, the bondholders under said first mortgage. The fact that subsequent mortgagees, by reason of their right in equity to redeem the first mortgage, and in order to derive benefit to themselves as subsequent mortgagees, have seen fit to buy up the interest of the first mortagagees, and thus combine in themselves the rights of both mortgagor and mortgagee under the first mortgage, and that they have done this instead of redeeming the first mortgage by paying the amount fixed by said decree of foreclosure,—does not touch the right of the trustees to hold all the lien originally existing in them for their service and expenses of administering the trust. Nor is that lien affected by the fact that the trustees might have a personal claim therefor against the bondholders. In reference to that lien as giving them an interest in the property, or its representative equivalent—the redemption money—it was their province to have had that money paid to them. If it had been so done, then it is agreed they could have retained of it enough to satisfy their reasonable charges for service and disbursements. But the bond-

holders—the *cestuis que trust*—saw fit to arrange the matter with their adversaries in interest, so as to let the decree have full effect on the title as between mortgagor and mortgagee, without the payment of the redemption money to the trustees. The legal title by the foreclosure unredeemed by payment of the money to the trustees, who had an interest in it by way of said lien, is still in the trustees; and if parties would get rid of them by a resort to a court of equity, as in the present case, it must be by doing towards the trustees, what the trustees would have done for themselves in case the money had been paid to them in redemption of the foreclosure.

The cases and doctrine produced and urged against the trustees in the argument, are right and conclusive as between mortgagor and mortgagee, as to the effect of a decree of foreclosure and redemption under it, or buying in the mortgagee's interest in lieu of strict redemption. Those cases do not involve the interest and right of a party, like the trustees in this case, who have a *lien* as against both mortgagor and mortgagee, upon the trust property and its avails.

All the parties in this cause claiming against the trustees, are chargeable with knowledge of the relations of said trustees, and of their rights arising from said relations. Such parties are standing in this litigation upon rights derived from the immediate parties to the creation of said trust, and are claiming to have and enjoy the fruits of the administration of said trust, resulting in said foreclosure of the first mortgage. It is not shown that said trustees have released or lost their lien and rights by anything they have done or omitted in reference to transfers and transactions between the parties interested in, and affected by, said first mortgage and its foreclosure.

Under the cross bill, the claim on the score of advances by Mr. Cobb and Mr. Wilson, is proper for consideration and adjudication. If those advances were a gratuity to the common interest involved in the foreclosure suit, that would end the claim. If, on the other hand, they were designed and understood as supplying a temporary and then present need of funds in the course of the administration of the trust, then the trustees should be held ac-

countable to them for those advances, and the property be chargeable for the same.

The claim of compensation for services by the trustees, is also proper for adjudication under the cross bill ; and any allowance therefor will be chargeable on said property.

The matter of fees, claimed to be due from the trustees to the estate of Mr Stoughton, stands on the same ground. Whatever services were procured by the trustees to be rendered by Mr. Stoughton in the relations they sustained as trustees, and were reasonable and proper, are to be compensated for by the trustees, and charged upon the trust property.

We are unable to find that either the trustees, personally, or Mr. Stoughton as their attorney and counsel, were so connected with, or participating in, the negotiations and transactions that have resulted in the title and rights now existing in the Rensselaer & Saratoga R. R. Co., as to disentitle a proper allowance for services of Mr. Stoughton, rendered for the trustees in the discharge of their duties and assertion of their rights as such trustees.

These several subjects of claim will be referred to a master, to ascertain and report to the court of chancery whatever may legitimately appertain thereto, to the end that they may be duly considered and adjudicated by that court.

The decree is reversed and cause remanded, with a mandate as above indicated.