Filed Nov. 13, 1894.

------◆------

No. 16,909.

THE PREMIER STEEL COMPANY *v.* YANDES ET AL.

TRUST.—*When Trustee Entitled to Compensation for Services in Trust Capacity.*—*Quantum Meruit.*—Where a person accepting a trust is not a beneficiary under the instrument creating the trust, and there is no agreement in relation to compensation of the trustee for his services, but he expected to be compensated therefor, and never understood that he was expected to serve gratuitously, the trustee is entitled to recover the reasonable value of his services in his trust capacity.

SAME.—*Compensation of Trustee.*—*Primary Liability for.*—*Mortgage.*— Where the labors of a trustee named in a mortgage securing certain

bonds consisted largely in doing the things which the mortgagor covenanted to do, such as keeping up the insurance on the mortgaged property, paying taxes, etc., because of the default of the mortgagor to do the same, the charges for compensation ought to be primarily against the mortgagor, or the mortgaged property.

SAME.—*Compensation of Trustee.—Fund Primarily Liable Therefor.*— Whether the claim of the trustee for compensation is primarily against one fund or another depends upon the facts of each particular case, *i. e.*, the character of the services rendered by the trustee.

From the Marion Circuit Court.

*A. Baker* and *E. Daniels*, for appellant.

*A. C. Ayres, A. Q. Jones, E. Ritter, H. L. Ritter, J. S. Duncan* and *C. W. Smith*, for appellees.

DAILEY, J.—On the 27th day of October, 1879, the Indianapolis Rolling Mill Company, a corporation, executed a mortgage on certain described real estate in Marion county, to secure fifty bonds of one thousand dollars each, due in ten years from date. Asa G. Pettibone was named in the mortgage as trustee, with a provision contained therein that if he should at any time fail, neglect, or be unable to act as trustee thereunder, the appellee, George B. Yandes, should become his successor. Pettibone accepted the trust, and continued to act as such trustee until shortly before the 8th day of July, 1880, when he resigned, and on the last named date the appellee, Yandes, accepted said trust and continued to act in that capacity until after the maturity of the bonds, as hereinafter stated. At the time he accepted the trust there was no agreement, either that he should receive compensation, or that he should serve without compensation. He never understood that it was expected he should serve gratuitously, and always expected to be recompensed therefor.

The company continued in active operations until in January, 1888. Up to that time the company had in the

main attended to the insurance of the property covered by said mortgage, and Yandes' services consisted mainly in seeing that insurance policies were furnished him, as required by the terms of the mortgage, and that the mortgagor performed the covenants contained in said instrument. After that date the mortgagor gave no attention to the insurance, and said trustee was required to keep constant notice as to the policies upon the premises to prevent a forfeiture and keep the insurance alive. At the time of the execution of the mortgage said Pettibone was president of the Citizens' National Bank of Indianapolis, and when Yandes accepted the trust he was cashier thereof, and it had the deposits of the Rolling Mill Company.

It was agreed between all the parties to this proceeding that a fair compensation to Yandes for his services was $1,050, but that there should be deemed to have been paid thereon the sum of $250, on account of benefits accrued to the bank by reason of such deposits. During the year 1886 the company paid directly to the holders thereof twenty of said bonds, which were canceled and delivered to the trustee.

In September, 1889, the company being embarrassed and creditors being about to commence proceedings to collect their claims, an arrangement was made between the unsecured creditors providing that the property covered by said mortgage should be conveyed to a trustee, to be held by him for one year, and if the debts were not paid within that time, the same should be conveyed to these creditors subject to such mortgage, and in such event the person or persons taking the conveyance should pay off the mortgage, and relieve the mortgagor from all liability on account thereof, and pursuant to such agreement, such property was conveyed to Albert Baker, trustee. At the end of the year the debts were not paid, and

the creditors made an arrangement to sell the property to appellant, the Premier Steel Company. But not being able to procure the production and surrender of said bonds for payment, it was arranged between the general creditors, the mortgagor, and the appellant, that instead of the mortgagor insisting upon the creditors or the appellant then paying off such outstanding bonds, it should accept the bond of the appellant with Charles W. De Pauw as surety conditioned for the assumption and payment of the mortgage indebtedness by the appellant, for the complete protection and indemnification of the mortgagor from any personal loss, damage, or inconvenience therefrom. Pursuant to said arrangement, the mortgaged property was conveyed to appellant and it executed such bond with the surety agreed upon.

When the proceedings were had in the court below, the appellant was the owner of the mortgaged property. At the time of the conveyance, the appellant company had no notice of the claim of Yandes other than such as would be inferred from the existence of the mortgage and knowledge of the acceptance of the trust by him. More than a year after the maturity of the bonds, the holders thereof not desiring to proceed to foreclose the same, and the mortgagor and those bound to pay them not desiring them to do so, Yandes gave notice to the mortgagor, the holders of the bonds, who resided in this State, and to the appellant, that he proposed to file his petition to the Marion Circuit Court, asking permission to resign, and an allowance for his services.

Accordingly, on the 24th day of January, 1891, he presented his petition to the court and prayed that the court make him such allowance. Thereupon it was agreed by and between all the parties to whom notice had been given, that the court might accept such resignation and appoint John W. Ray successor in said trust,

and that the matter of such allowance should be continued until the new trustee should be able to confer with all the bondholders, when it should be disposed of with the same force and effect as if acted upon at the time of such resignation and before the appointment of his successor. Under the foregoing facts the court allowed Yandes $800 for his services as trustee, and decreed said sum a part of the indebtedness secured by said mortgage; that the same is a first charge upon the mortgaged premises prior to the claims of the holders of the bonds secured by the mortgage, and that the Premier Steel Company took such mortgaged real estate, charged with the payment of said sum, in addition to the principal and interest of the bonds. From this decision the appellant prosecutes an appeal.

Three questions are presented by the record. 1st. Under the foregoing facts was Yandes entitled to any allowance for his services? 2d. If so who ought to pay the same, or upon what fund should such allowance be made chargeable? 3d. Did the court in this proceeding have authority to fix such compensation, decree who should pay it, or upon what fund or property chargeable, and to make the order it did make?

It is true there are many English authorities holding that trustees are not entitled to compensation unless there is an agreement to that effect and provision made therefor. But the overwhelming weight of authority in this country is the other way, and is supported by every consideration of right and justice. By the acceptance of the trust delicate and important duties were imposed on the trustee, the nonperformance of which would have caused him to incur grave responsibilities. He was required, as an incident to the trust, to exercise diligence and active attention to preserve the property and secure the performance by the mortgagor of the covenants con-

tained in the mortgage.   In the discharge of his duties, during more than ten years of active service, he was vigilant in watching and looking out for the solvency of the insurance companies, observed the forms of the policies, kept the insurance alive; also, saw that the taxes and assessments against the property were paid, and no liens allowed to accrue thereon.

It is conceded in the brief of the learned counsel for the appellant, that the special finding shows the exercise of extreme caution on the part of Mr. Yandes, possibly some worry, but for all this it is asserted ''he must hold his temperament responsible, not the trust estate;'' and this, too, when the trustee did not suppose he was required to perform such services gratuitously, and expected to receive fair compensation.

It is a familiar rule of law that where one requests another to perform services of value to him, and there is no agreement as to compensation, it implies a promise on the part of the latter to pay therefor what such services are reasonably worth.   In such case the party benefited can not evade his liability when a reasonable remuneration is asked, upon the ground that there was no agreement to pay.   But we are not without authority in support of this reasoning.   In Jones Corp. Bonds and Mort. (2d ed.), section 567, it is said: ''Trustees under corporate mortgages have an inherent equitable right to be reimbursed all expenses reasonably incurred in the execution of the trust, and for such expenses they have a lien upon the trust property. Their rights go even further than this; for, if the trust property prove insufficient to reimburse the trustees for their proper expenses and *reasonable compensation*, they may call upon the bondholders in whose behalf the trust was created to pay them.   It is immaterial that the deed of trust makes no provision for the payment of such expenses

and charges; this is a legal right, which necessarily attends the administration of the trust.    The franchise and property conveyed to the trustees become charged with a lien in their favor, and they remain so charged until the trustees themselves do something that operates as a discharge of such lien.  * * *  Their lien upon the property extends not merely to claims for their own services, and for payments actually made by them, but to advances made to them by bondholders to supply them with funds in the course of the administration of the trust,'' etc.

The authorities cited in support of the text go fully to the point, and apply as well to ''conditional trusts'' as to ''testamentary trusts'' and ''official trusts,'' and deal both with the question of reimbursement for advances and compensation for services.

Section 570, *supra*, says the receiver's claim is the first charge upon the property, and by section 574, it appears that the trustee is entitled to his compensation, and to the expenses of the trust, and costs of sale before making distribution of the proceeds of sale to the bondholders.    The mere fact that there has been no foreclosure and no fund in court, can not change the principle here involved.    It is suggested that Yandes' services, as found by the court, were not such as were required of him in his trust capacity.    There are many covenants contained in the mortgage to be kept and performed, such as payment of taxes, or other assessments or liens; keeping the premises insured to the amount of $50,000, and in good and complete state of repairs; doing nothing by which the value of the security should in any wise be weakened, lessened or destroyed.    It was also provided that if the mortgagor failed to make the payments the trustee might foreclose for the breach, and it is not questioned that he performed all that was required of him in these respects.

The appellant's counsel interpose as an objection to the allowance, the rule that where the trustee is himself one of the beneficiaries under the instrument creating such trust, and there is no contract for compensation therein, and it does not otherwise appear that the same was intended to be paid, none should be allowed. This rule has a fair support in reason and justice. The benefit that comes to the trustee by the terms of the instrument, in such case, may well be supposed to be the consideration upon which the trustee accepts and executes the trust. But Yandes was not a beneficiary under the instrument, nor was the bank. It is true, that at the time the trust was created the mortgagor was a depositor in the bank, and the bank was to that extent benefited. But that had nothing whatever to do with the matter of the trust. The mortgagor was a depositor before the creation of the trust, whether it continued to be so or not depended upon it alone; there is no pretense that there was any agreement that the deposit should continue, or that the trustee should perform these services in consideration of the deposit. Indeed, the latter supposition is expressly negatived by the seventh special finding.

There is a question presented as to whether the trustee's services are chargeable on the funds produced by the payment of the bonds, and to be deducted therefrom, so that the cost comes out of this fund, or whether such charges should be against the property, to be paid by the mortgagor, in addition to the principal and interest, before his mortgage can be satisfied. It seems difficult to state any general rule, as to whether the claim of the trustee is primarily against the one fund or the other. The solution of that question, we think, should depend upon the facts of each particular case. In our opinion, the character of the services re-

quired to be performed by the trustee, and which have been performed, and for which compensation is asked, ought to be taken into consideration in determining who is primarily liable therefor.

In this case, as the labors of the trustee have consisted largely in the doing of things which the mortgagor covenanted to do, such as keeping up the insurance, paying the taxes, etc., and as the trustee has been compelled to do the work because of the default of the mortgagor, the charges ought to be primarily against the mortgagor, or the mortgaged property.

As to the eleventh special finding, that neither the bondholders, the rolling mill company, nor the Premier Steel Company had any knowledge as to the claim and demand of Yandes for compensation, except that given by the record of the mortgage, and the acceptance of the trust by him, until after the execution of the bond of indemnity by the appellant to the mortgagor, it is clear that the bondholders and the mortgagor knew, from the beginning, of the relations of Yandes to the trust, and the appellant was given notice of this relation, by the very terms of the indemnity bond, and also by the terms of the deed to it of the property, which contained a covenant to pay the mortgage. Thus all the parties knew of such relation, and knowing it, they must take cognizance of his right to claim pay for services. Upon this point, the court in *Rensselaer, etc., R. R. Co.* v. *Miller*, 47 Vt. 146, (154), says: "All the parties in this cause claiming against the trustees, are chargeable with knowledge of the relations of said trustees, and of their rights arising from said relation." It is contended by the appellant, that if Yandes was entitled to compensation as upon a *quantum meruit*, yet, so much of the judgment as decreed a first lien upon the mortgaged premises, and ordered the sale thereof as upon

foreclosure, was void for want of jurisdiction of the *corpus* of the trust, and that the only way the trustee had to secure his allowance, and compel its payment, was by a bill in equity.

It is conceded that this was true at common law. But since 1843 it has been the policy of our law to keep such express trusts constantly under the supervision and control of the courts, so that the trustees can be required by summary proceedings to answer as to their conduct.

A careful reading of the Revised Statutes of 1881, sections 2969 to 2997, inclusive, convinces us that it was the purpose of the Legislature to give courts jurisdiction of conventional trusts, however created. So far as the present question is concerned, there is no difference whether the trust is created by mortgage, by deed, or by will, as the trustee is a *quasi* officer of the court. Indeed, it appears to us, there can be little room for doubt as to this proposition.

Section 2978 provides that upon the death of a sole or surviving trustee of an express trust, the trust estate vests in the court, and it shall appoint a successor.

Section 2979 provides that "Upon petition of any trustee of an express trust, a court having jurisdiction may accept his resignation and discharge him from the trust, upon such terms as the rights of the persons interested in the execution of the trust may require."

Section 2980 provides that the court may remove a trustee for violation or neglect of duty.

And section 2997 provides that "said trustee and the funds in his hands shall be at all times under the equitable control of the court having jurisdiction thereof for the preservation of the funds and carrying out the purposes of the trust."

The record in this case affirmatively shows that at the time this order was made, every bondholder, the mort-

gagor, the Premier Steel Company, and the successor in the trust, had been notified and were present in court by counsel, possessed of every opportunity to protect their rights. It would be a strange conclusion to hold that although a statute should provide for the resignation of a trustee, and its acceptance by the court, and his discharge, upon such terms as the rights of the persons interested in the trust might require, and yet, that the court could not fix his compensation. Of course his discharge presupposes a settlement and accounting for the trust fund and a complete adjustment of all the affairs pertaining to the trust, and it would be unjust to compel him to file a bill in equity to recover what may be due him as a just recompense for his time and trouble.

As we find no error in the record, the judgment is affirmed.

Filed Nov. 21, 1894.