MARGARET B. SOWLES et al. *v.* BENNETT C. HALL and WIFE.

October Term, 1900

Present: TAFT, C. J., TYLER, MUNSON and WATSON, JJ.

Opinion filed February 12, 1901.

*Exception to finding of fact*—Exceptions to findings of fact made by a master are not sustainable unless it appears that the findings were made upon insufficient evidence.

*Right of an executor or trustee to necessary counsel and assistance*—In the preservation and protection of a large estate, one who was executor and trustee had, on the facts found in the case, a right to employ another as clerk, agent and attorney at a reasonable annual salary and to be compensated for his disbursements and obligations in that behalf out of the estate.

*One may not take advantage of his own fault*—If an agent, in accordance with the instructions of his principal, commingles various funds and omits to make proper book entries, the principal, in an accounting with the agent, can have no advantage from the latter's compliance with such instructions.

*Chancery—A specific lien on real property decreed as security for a sum found due on an accounting in equity*—Real estate having been put by the orators into the possession of an agent, to whom they were indebted for arrears of salary, under an agreement that he might hold the same as security for his salary due and to become due, and he having taken possession of the same and paid out money for repairs, taxes and insurance thereon, and a further indebtedness for salary having in the meantime accrued, the agent

on an accounting in equity was decreed an equitable and specific lien upon such real estate as security for the payment of the sum found due him from the orators.

*Practice in Chancery—Cross-bill filed after report of special master—* To the end that a proper final decree may be made, the Court of Chancery, after the report of a special master is filed, may permit a defendant to file a cross-bill based upon an equity growing out of the claim set up in the original bill and consistent with the claim made in the answer.

CHANCERY, Franklin County. On September 1, 1900, at Chambers, before *Stafford,* Chancellor, this case came on for hearing upon bills, answers, replications, cross-bill, master's report, exceptions to master's report and a motion to dismiss the cross-bill, whereupon, the parties agreeing that the same might be done, it was ordered and decreed *pro forma* that the motion to dismiss the cross-bill be denied, that the exceptions to the report be overruled and that the orators, Margaret B. Sowles as trustee and Edward A. Sowles as executor, recover of the defendants $5,478.23. Both parties appealed.

The original bill was brought against Bennett C. Hall in favor of Margaret B. Sowles, Margaret B. Sowles trustee of Susan B. Sowles, and Edward A. Sowles executor or trustee and husband of said Margaret B. Sowles.

The orators claimed to have acquired title to the Chagnon property, referred to in the opinion, through one Armington. It appeared from oral evidence, received subject to objection, that the defendant Bennett C. Hall had bid off the same at a tax sale.

*E. A. Sowles* and *H. A. Burt* for the orators.

*Hogan & Hogan, H. Charles Royce* and *Alfred A. Hall* for the defendants.

TYLER, J. The principal allegations in the bill are, that Hiram Bellows died testate in the year 1876, leaving a large amount of real and personal estate; that the oratrix Margaret

B. Sowles was a legatee and trustee under his will; that his wife Susan B. Bellows, who was his residuary legatee, died testate in the year 1880, also leaving a large estate, having made the oratrix residuary legatee and trustee for her daughter Susan B. Sowles; that the orator Edward A. Sowles was made executor of both wills, and trustee under some of the provisions of the will of Mrs. Bellows; that large bequests and devises were made to the oratrix under both wills.

It is further alleged that the orator qualified and entered upon his duties as executor of said wills and took into his possession a large amount of property belonging to the two estates; that the defendant Bennett C. Hall was an attorney at law at St. Albans, and from the time when the orator entered upon his duties down to about 1884 he was employed by the orator as his attorney and agent, and in that capacity and under such employment there came into his hands a large amount of the funds of the two estates by the collection of notes, rents, and from other sources, he knowing such sums to be trust funds under said wills, and that he also received many specific articles of various kinds; that in many instances such collections were made by him without the knowledge of the orator and oratrix, and that in some instances the defendant rendered no account thereof; that he cut timber from the land of said estates and applied and converted it to his own use; that he has in possession correspondence, memoranda and books of account which were furnished to him by the orator and oratrix and were kept by him in the transaction of his business as such agent and attorney which will show receipts by him of large sums of money, and that he refuses to surrender such books to the orator and oratrix and to allow them to inspect the same; that the orator and oratrix by virtue of a certain lease owned by Hiram Bellows in his lifetime hold title to a certain house and lot in St. Albans known as the

Chagnon house of which they took peaceable possession in the year 1880 or 1881 for the non-payment of rent, and that they again took possession thereof in January 1889; that the defendant has received the rent of said house since 1881 and refuses to account for the same.    In short, the bill alleges that the defendant has received large amounts of trust moneys and other property of said estates in a trust and fiduciary capacity by virtue of his employment and refuses to account for the same, and that in some instances the facts have only recently come to the knowledge of the orator and oratrix.

The prayer is for full discovery and an accounting by the defendant, and especially that he account for the rents of the Chagnon house, and that he answer whether he has not obtained possession of the same without any deed thereof or assignment of lease from the rightful owners; also that an injunction issue, restraining him from encumbering the Chagnon property and from interfering with the possession thereof by the orator and oratrix, and for general relief.

The answer admits the defendant's employment by the orator and alleges that from the time of the death of Hiram Bellows, and again from the death of Susan B. Bellows down to December 10, 1886, he was employed continuously and acted not only as agent and attorney of the orator personally, but also in his capacity as executor and trustee, and as the agent and attorney of the oratrix personally and in her capacity as trustee under the will of Susan B. Bellows; that all the moneys collected by him were collected as agent and attorney for the orator and oratrix in their several capacities; that he knew that some of the moneys collected belonged to said estates, but denies that he knew they were trust funds or that they came into the hands of the orator and oratrix in trust. He alleges that all that he did was under the direction of the orator and oratrix in some or all of their several capacities and that

he has fully accounted to them for all funds received by him as such agent and attorney. He denies that he took to himself the title and possession of the Chagnon property as alleged in the bill, but alleges that he purchased and paid for the same in his own right and for his own benefit; that in the year 1882 he entered into the quiet and peaceable possession thereof and continued in such possession under a claim of right as against the orator and oratrix and with their full knowledge and acquiescence, until the year 1890; that he expended large sums of money in repairs of the house and for taxes and insurance, and gave considerable time to the care and oversight of the property. He alleges that he has not received full compensation for his services, that a large sum is due him as salary, and claims that the same should be allowed him in an accounting and that payment of the same should be decreed to him.

In June, 1893, the orator and oratrix filed a supplemental bill, making Ida A. Hall, wife of the defendant B. C. Hall a party defendant, alleging that certain property owned separately by her was purchased with trust funds of said estate. The defendants filed their answer denying these allegations. Defendant B. C. Hall, on motion, was permitted to file a cross-bill and did file one May 24, 1900, based upon the findings of the special master. A demurrer was filed to the cross-bill which was overruled. The orator and oratrix moved to dismiss the cross-bill, and a *pro forma* decree was made from which both parties appealed, and the case comes here upon a special master's report, the exceptions by the orator and oratrix to the same and upon an appeal from said decree.

The master finds the facts alleged in the bill as to the decease of Hiram Bellows and his wife, the provisions of their respective wills, the appointment of the orator as executor thereof, his qualifying and entering upon his duties as such executor.

To show the relations of the defendant to the trust estates the master finds that he was employed as clerk, attorney and agent in the orator's law office from August 1873, to December 10, 1886, upon a stipulated salary which was fully adjusted and paid to August 1878; that for the next three years, his salary was fixed at $500, $540, $600, respectively, when it was increased to $800 and so remained until the end of his service. It is found that down to December 1876, he was the employee of the orator individually, but from that time—when the orator was appointed executor of Hiram Bellows' will—he acted for the orator personally and in his capacity of executor, and also for the oratrix as legatee and trustee under the will, and generally for Hiram Bellows' estate; that after the orator's appointment as executor of Mrs. Bellows' will he was further employed by the orator and acted for him as such executor and also for the oratrix as residuary legatee and trustee under Mrs. Bellows' will and generally for her estate; that his employment was to assist the orator generally in his business as an attorney and in the management of the estates; that he assisted in the oversight of the property, collected rents and attended to repairs, assisted in the care of the farms and stock thereon, bought supplies for the tannery, assisted the orator in the litigation that grew out of the failure of the St. Albans bank, advised with the oratrix with relation to her property and business, and in general did whatever the orator directed him to do for himself or for the oratrix and for the two estates. The master finds that the services thus rendered were valuable and beneficial to the estates and to the orators in their several capacities; that during all this time the orator acted as attorney and agent for his wife, the oratrix, and as such employed the defendant to act for her, of which employment she was cognizant, and that she recognized and ratified such employment with full knowledge of the facts, authorized its con-

tinuance and promised the defendant payment for his services; that all payments upon his salary were made by the orators or by E. A. Sowles, acting for himself and the oratrix in their several capacities, to apply on such salary, or they were applied by the defendant from collections made by him, either by the direction and request or with the full knowledge of the orators or by the orator acting for them in such capacity; that no specific application was made or directed by the orators or either of them of any such payments, but that they were so applied by the defendant on his salary generally with the orator's knowledge, and that he had the right to have the payments so applied.

The master finds that the books were kept under the direction of the orator and that they were always open to his inspection, and he fails to find that any collections were made or applied by the defendant secretly or without the full knowledge of the orators.

The master sets out the several conveyances by which the orators claim to have acquired title to the Chagnon house. It is unnecessary to determine, for the purpose of this case, what interest in that property Armington conveyed by the lease to Hiram Bellows, nor what interest the defendant acquired under the tax sale.

It is found that in the year 1884, when the orators were in financial difficulties on account of the failure of The First National Bank at St. Albans, and were liable to have trouble on account of assessments levied against them as stockholders, the orator, acting in his several capacities, directed the defendant to make claim to the Chagnon property as owner; that the defendant was at that time trying to get his name off from certain paper that he had signed for the orators and that there was then a large sum due him as salary; that accordingly he did make claim to the property for the purpose of preventing

the officers of the United States Government from reaching it by attachment or sequestration as the property of the orators, and that this was done with the full knowledge and approval of the orators, acting in their several capacities, and with their agreement that the defendant should hold the property for the purpose aforesaid and as security to him for what they or either of them were then owing him or might thereafter owe him on account of his salary and disbursements; that from June, 1882, to the bringing of this suit the defendant remained in the peaceable, continuous and uninterrupted possession and control of the property, under a claim of right, and with the full knowledge, acquiescence and consent of the orators who never made any claim or asserted any right in relation thereto until a short time before bringing this suit.

The exceptions are not concise as the rule requires, but are voluminous and tautological. So far as they relate to findings of fact they are not sustainable, for it does not appear that all findings were not made upon sufficient evidence. Summarized, they present certain questions of law which the orators insist upon in their briefs:

The orators insist that, though E. A. Sowles was executor of Hiram Bellows' and Susan B. Bellows' wills and the attorney for both estates, and for his wife the oratrix in every capacity in which she acted, as stated in the report, and as such attorney he found it necessary to employ the defendant to assist him in his duties and agreed to pay him a salary therefor, and did pay him for a portion of the time of his service, the defendant should now be decreed to pay back to the orators what he has received, for the reason that it was paid out of trust funds of the estates, and for the same reason they claim that he has no equitable claim for services performed under the agreement and not paid for.

That for the same reason and for the further one that the oratrix, until January 1, 1885, when the married woman's act went into effect, could give no validity to the contract between the defendant and her husband, though the defendant's services were rendered with her full knowledge and approval, and she knew they were valuable to her and to the interests of the estates which she represented.

Upon the same grounds the orators pray that the defendant may be decreed to convey to them whatever interest he has in the Chagnon property and account for and pay over to them all rents and profits thereof that he has received, notwithstanding the fact that he bid the property off at their request and that they agreed with him that he should hold the same as security for balances due or to become due to him on account of salary.

The common law doctrine in respect to the legal disability of married women to make contracts is well settled, and its application has been stated by this court in the cases cited upon the orators' brief.    Mrs. Sowles was under this disability during most of the time of the defendant's employment.    It not being found that she had come into the possession of her legacies under the wills, she had no separate estate within the rule of *Dale* v. *Robinson,* 51 Vt. 20, *Priest, Barber & Co.* v. *Cone et al.,* 51 Vt. 495, *Sargeant* v. *French,* 54 Vt. 384, *Valentine* v. *Bell,* 66 Vt. 280, and *Re Nelson's will,* 70 Vt. 130; therefore compensation for the defendant's service rendered prior to January 1, 1885, is not recoverable upon the ground that it was beneficial to her separate estate.

But these rules which are insisted upon by the orators do not control this case nor have they any application to it. Applying the strict rule of the common law that, "a man and his wife are one, and that one is the husband," it was Mr. Sowles' legal right—to say nothing of his duty—to care for

and protect her interests in the estates, especially when the case shows that each of the estates was large, and that large bequests and devises were made to her in her own right and as trustee for her daughter. It also appears that during all the time in controversy Mr. Sowles acted as the agent and attorney of his wife and that he employed the defendant to act for her.

But the orator's right to employ the defendant rested upon a broader ground than this: He was executor of both wills and as such had the management and control of the two estates. He was charged with the legal duty of preserving and protecting them and he had the power to do whatever was necessary for that purpose. It was his judgment that the defendant's assistance was necessary in the performance of his duties as executor of the wills and attorney for the estates and for Mrs. Sowles, and neither the employment nor the reasonableness of the compensation agreed upon between him and the defendant is open to question.

Furthermore, by the decision in *Smith* v. *Burton,* 67 Vt. 514, no person other than the orators had any interest in these estates after the decree of the Probate Court of March 30, 1881. That decree, made at Mrs. Sowles' request, gave the exclusive possession and control of both estates to her husband, so it is idle to contend that he had not authority to contract with and pay counsel for assistance in their management.

The master fails to find that the defendant secretly collected or received trust funds of the estates, or wrongfully converted any of such funds to his own use unless applying them upon his salary with Mr. Sowles' knowledge and approval was a wrongful conversion. But the right to employ counsel and other necessary assistance was incident to the administration of the trusts which the orator undertook.

While it is a general rule that an executor or administrator is not allowed to employ agents at the expense of the estate to perform those duties which by accepting the office he has taken upon himself, yet it is laid down that he may employ an agent to collect assets in cases where a provident person might do so in his own affairs, and for the expenses so incurred credit will be allowed him. He has the right, unless restricted by statute, to employ counsel whenever it is necessary or proper to protect the estate, or to enable him to manage it properly, and he will be allowed reasonable charges paid by him for such service. 11 Am. & Eng. Ency., 1237 *et seq.*

A trustee may employ whatever assistants are necessary, and pay them out of the trust money. *Parker* v. *Johnson,* 37 N. J. Eq. 366. Perry on Trusts, s. 910, 911, lays down the rule that trustees have an inherent equitable right to be reimbursed all expenses which they reasonably incur in the execution of the trust, and it is immaterial that there are no provisions for such expenses in the instrument of trust; that if a person undertakes an office for another in relation to property he has a natural right to be reimbursed all the money necessarily expended in the performance of the duty. Hill, 572. These rules are applied in *Rens. & Sar. R. R. Co.* v. *Miller & Knapp,* 47 Vt. 146. The orators' contention that this application of the funds of the estate was a diversion of them is not sustainable.

The orators can take no advantage of the fact that the various funds received were not kept separate, for it is found that the orator always had access to the book, knew the manner in which it was kept and that it was kept in accordance with his direction until January 1885, when he directed the defendant to discontinue keeping it for the reason that the entries therein would be evidence of the transactions and might

appear sometime when he did not wish to have them so appear, after which the defendant correctly kept an account for his own convenience of the money collected and paid over to the orator and applied certain sums upon his salary under the orator's direction.

If, as the master finds, the orators, or Mr. Sowles acting for both, placed the Chagnon property in the defendant's hands to keep it out of the reach of creditors, equitably it should remain there, and this court should not lend its aid to compel a reconveyance. Upon the facts found the defendant has an equitable lien upon it for the amount due him on an accounting and cannot be compelled to reconvey it until the amount due to him is paid.

In the circumstances of the case, and the master's finding that a large balance was due the defendant, the court of chancery was clearly justified in allowing the defendant to file a cross-bill after the report was filed to the end that a proper final decree might be made. *Hathaway* v. *Hagan,* 59 Vt. 75. The cross-bill was based upon an equity growing out of the claim set up in the original bill, and it is consistent with the claim made in the answer. Sto. Eq. Pl. s. 398-9; *Rutland* v. *Paige,* 24 Vt. 181. Whether the defendant could have affirmative relief upon the averments in the answer it is not necessary to decide.

Upon the facts found in respect to the payments made upon the defendant's salary the statute of frauds has no application to the case.

There are no facts found tending to show that the defendant Ida A. Hall ever received any money belonging to these estates, and the bill was properly dismissed as to her. All questions of fact were decided by the master upon proper evidence. He credits the defendant with his salary as per agreement, charges him with all sums received by him in payment

thereof, and finds a balance due him from the orators of $3,119.31.

This disposes of all the questions of law arising upon the report.

That part of the *pro forma* decree which denies the orators' motion to dismiss the cross-bill and overrules their exceptions to the report is sustained. Wherein it finds for the orators to recover an amount from the defendant it is reversed and the cause is remanded with mandate that the orators be decreed to pay the defendant Bennett C. Hall, the balance found due him by the master, being $3,119.31 and interest thereon from September 6, 1899, and his costs; that he have an equitable and specific lien in the nature of a mortgage for the payment thereof upon the Chagnon property, described in the report, including the rents thereon collected and held by order of the court, and that a time may be fixed within which the orators shall pay the amount of the decree and redeem said property.